**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

|  |  |
|---|---|
| ANTHEMIS VENTURE FUND II S.C.Sp, a Luxembourg special limited partnership, individually and through ANTHEMIS CAPITAL MANAGERS LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> VICTORY PARK CAPITAL ADVISORS, LLC, a Delaware limited liability company, <br><br> Defendant. | C.A. No. 2024-1330-LWW |

**MEMORANDUM OPINION**

Date Submitted: September 11, 2025
Date Decided: December 19, 2025

Joseph B. Cicero, Samantha Callejas, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware; Adam D. Cole, Melissa R. Chernofsky, CHIPMAN BROWN CICERO & COLE, LLP, New York, New York; *Attorneys for Plaintiff*

T. Brad Davey, Nina N. Monzack, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; James C. Bookhout, KATTEN MUCHIN ROSENMAN LLP, Chicago, Illinois; *Attorneys for Defendant*

**WILL, Vice Chancellor**

This action arises from a failed equity investment in Moonshot Brands Inc., an e-commerce aggregator. The plaintiff, a venture capital fund, alleges that Moonshot's senior lender wrongfully induced it to invest through false promises to fund Moonshot's growth. The lender had no contractual, fiduciary, or other special relationship with the plaintiff.

The plaintiff accuses the lender of fraud, negligent misrepresentation, negligent misstatement, and promissory estoppel, seeking to recover its total loss. The lender has moved to dismiss the complaint for failure to state a claim. Because the plaintiff has not pleaded a false statement, actionable misrepresentation, or justifiable reliance, the motion is granted.

## I.    BACKGROUND

The following facts are drawn from the Amended Verified Complaint ("Complaint") and the documents it incorporates by reference.[1]

---

[1]    Am. Verified Compl. (Dkt. 10) ("Am. Compl."); *see Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)); *In re Books-A-Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (stating that the court can take judicial notice of "facts that are not subject to reasonable dispute" (citation omitted)).

1

## A. VPC's Investment in Moonshot

Moonshot Brands Inc. is an "aggregator" formed in 2019 to acquire e-commerce brands.[2] Its business model involves acquiring and operating the brands, then consolidating them into an omnichannel distribution system.[3] To execute this strategy, Moonshot relies on a mix of debt and equity financing.[4]

In April 2021, Moonshot secured a $100 million senior line of credit from Victory Park Capital ("VPC"), an investment advisory firm.[5] Under the parties' "Financing Agreement," VPC committed to funding 80% of the purchase price for Moonshot's brand acquisitions, provided certain conditions were met.[6] A separate letter agreement obligated Moonshot to raise $15 million in capital by October 15, 2021 (the "Equity Raise Condition")—the equity needed to fund the remaining 20% of acquisition costs.[7] Failure to meet the Equity Raise Condition relieved VPC of its obligation to fund future advances.[8]

---

[2] Am. Compl. ¶¶ 2, 42.

[3] *Id.* ¶¶ 44-46; *see also id.* at 3.

[4] *Id.* ¶¶ 51-52.

[5] *Id.* ¶¶ 37, 52-53. VPC is a Delaware limited liability company. *Id.* ¶ 37.

[6] *Id.* ¶ 61; Ex. A to Opening Br. in Supp. of Victory Park Capital Advisors, LLC's Mot. to Dismiss Am. Verified Compl. (Dkt. 15) ("Financing Agreement").

[7] Am. Compl. ¶¶ 64, 66; *see* Pl.'s Ex. 5. The documents incorporated by reference into the Complaint were not attached to the pleading. Some were later supplied by the plaintiff at the request of the court. *See* Dkt. 31.

[8] Am. Compl. ¶ 66.

## B. The Financing Agreement Amendments

By October 2021, Moonshot had raised approximately $13.4 million in equity, falling short of the $15 million Equity Raise Condition.[9] Consequently, on October 28, 2021, VPC and Moonshot amended the Financing Agreement.[10] This amendment altered the lending relationship, absolving VPC of its obligation to fund purchases and granting it "sole discretion" over whether to advance future funds.[11] It also required Moonshot to prepay certain discretionary loans within four months.[12]

In December 2021, the parties executed a second amendment to the Financing Agreement.[13] This amendment required Moonshot to raise at least $3 million in additional equity by March 31, 2022.[14] If Moonshot failed, it was obligated to issue warrants for VPC to purchase Moonshot stock.[15]

---

[9] *Id.* ¶ 68.

[10] *Id.* ¶¶ 69-70; *see* Ex. 1 to Letter Regarding Docs. Incorporated by Reference (Dkt. 31) ("First Amendment").

[11] Am. Compl. ¶ 71; First Amendment 2 (amending Section 5.2).

[12] Am. Compl. ¶ 72; First Amendment § 2.3.

[13] Am. Compl. ¶¶ 73-74; *see* Ex. 2 to Letter Regarding Docs. Incorporated by Reference (Dkt. 31).

[14] Am. Compl. ¶ 75.

[15] *Id.*

The amendments effectively froze Moonshot's line of credit, halting its growth plans and impairing its ability to service the debt.[16]  To resume operations, Moonshot needed a "covenant holiday."

## C. Enter Anthemis

In late 2021, Moonshot sought new equity financing to restart its growth plan. It engaged with Anthemis Venture Fund II S.C.Sp., a London-based venture capital fund.[17]  Anthemis expressed willingness to invest $10 million, viewing the VPC debt facility as a "key element" of its investment thesis.[18]  Because the loan facility was frozen and funding remained in VPC's sole discretion, Anthemis sought assurance that VPC was committed to funding Moonshot's future loan requests before Anthemis would invest.[19]

On December 23, 2021, VPC's General Counsel issued a letter addressed to "To Whom It May Concern" (the "December 23 Letter").[20]  It stated that, subject to Moonshot raising $10 million in equity by January 31, 2022, VPC "would be willing" to waive the restrictive covenants preventing funding and amend the

---

[16] *Id.* ¶ 76.

[17] *Id.* ¶¶ 78-79.  Anthemis is organized under the laws of the Grand Duchy of Luxembourg. *Id.* ¶ 34.  Its manager is Anthemis Capital Managers Limited, a private equity firm that invests in pre-seed to growth-stage companies.  *Id.* ¶ 25.

[18] *Id.* ¶¶ 80, 83, 86.

[19] *Id.* ¶¶ 87-89.

[20] *Id.* ¶ 90; *see* Ex. 3 to Letter Regarding Docs. Incorporated by Reference (Dkt. 31) ("Dec. 23 Letter").

liquidity requirements in the Financing Agreement.[21]  The letter included a disclaimer: it "d[id] not constitute or create any guaranty or other obligation of VPC to ultimately effect the amendments detailed [t]herein."[22]

The same day, a VPC Vice President emailed the December 23 Letter to Moonshot executives (the "December 23 Email").[23]  He wrote that the letter "should provide some comfort for Anthemis that upon closing[,] the business has runway to capitalize on the new equity."[24]  He added that the arrangement was designed to get Anthemis's investment committee "comfortable with the business shifting back into growth mode."[25]

### D. The Third Amendment

On January 18, 2022, VPC and Moonshot amended the Financing Agreement once again (the "Third Amendment").  The Third Amendment established a "covenant holiday," which waived compliance with certain earnings and capital ratios through September 2022.[26]  It stipulated that upon the closing of Anthemis's equity investment, loan advances to Moonshot would "cease to be made solely at

---

[21] Am. Compl. ¶ 90; Dec. 23 Letter.

[22] Am. Compl. ¶ 90; Dec. 23 Letter.

[23] Am. Compl. ¶¶ 91-92.

[24] *Id.*; *see* Ex. 4 to Letter Regarding Docs. Incorporated by Reference (Dkt. 31) ("Dec. 23 Email").

[25] Am. Compl. ¶ 92; Dec. 23 Email 2.

[26] Am. Compl. ¶ 100.

[VPC's] discretion" and "resume being made in accordance with the other terms of" the Financing Agreement.[27]

In Anthemis's view, the Third Amendment "confirmed VPC's commitment to lend."[28] After completing due diligence, Anthemis and Moonshot entered a Series Preferred Stock Purchase Agreement on January 21, 2022.[29] Under that agreement, Anthemis agreed to purchase $10 million in shares of Moonshot preferred stock.[30]

### E.     Moonshot Craters

Despite the capital infusion, Moonshot's performance lagged. Beginning in April 2022, VPC pushed Moonshot to merge with another aggregator—a proposal Moonshot's board rejected.[31] Tensions escalated in July 2022 when, despite the covenant holiday, VPC refused Moonshot's request to fund new brand acquisitions.[32]

Moonshot was unable to improve its financial position. In October 2022, after the expiration of the covenant holiday, VPC declared a default under the Financing

---

[27] *Id.* ¶ 97.

[28] *Id.* ¶¶ 95, 101 (stating that the Third Amendment "was directed towards VPC reassuming its nondiscretionary obligation to provide the 'runway' it had represented to Anthemis by amending the provisions that had limited Moonshot's growth plan").

[29] *Id.* ¶ 102.

[30] *Id.* ¶¶ 102, 104.

[31] *Id.* ¶ 120.

[32] *Id.* ¶¶ 121-25.

Agreement.[33]   VPC then exercised its secure creditor rights, foreclosing on Moonshot and merging it with other VPC-funded aggregators by March 2024.[34]

Anthemis's $10 million equity investment became worthless.

## F.   This Litigation

Anthemis commenced this action on December 20, 2024.[35]  After VPC moved to dismiss, Anthemis filed the operative Complaint on March 3, 2025.[36]  The crux of the suit is that VPC "wrongfully induced" Anthemis's investment through the December 23 Letter, December 23 Email, and execution of the Third Amendment.[37] Anthemis alleges that VPC "intended all along to use its overwhelming leverage as Moonshot's secured lender" to foreclose upon Moonshot and integrate it "among its other debt investments," causing Anthemis to "suffer[] a total loss."[38]  Anthemis advances claims for fraud (Count I), negligent misrepresentation (Count II), negligent misstatement (Count III), and promissory estoppel (Count IV).[39]

---

[33] *Id.* ¶ 136.

[34] *Id.* ¶¶ 136-37.

[35] Verified Compl. (Dkt. 1).

[36] *See* Mot. to Dismiss Verified Compl. (Dkt. 4); Am. Compl. (Dkt. 10).

[37] Am. Compl. ¶¶ 1, 15.

[38] *Id.* ¶¶ 1, 106.

[39] *Id.* ¶¶ 140-87.

VPC moved to dismiss the amended complaint for failure to state a claim on which relief can be granted.[40] The motion was fully briefed as of May 30, and oral argument was held on September 11.[41]

## II. LEGAL ANALYSIS

VPC moves for dismissal under Court of Chancery Rule 12(b)(6).[42] In resolving the motion, I must "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party."[43] I need not "accept every strained interpretation of [Anthemis's] allegations"[44] or conclusory statements "unsupported by allegations of specific facts."[45] Dismissal is appropriate if Anthemis cannot "recover under any reasonably conceivable set of circumstances susceptible of proof."[46]

---

[40] *See* Mot. to Dismiss Verified Am. Compl. (Dkt. 12); Opening Br. in Supp. of Victory Park Capital Advisors, LLC's Mot. to Dismiss Am. Verified Compl. (Dkt. 15) ("Def.'s Opening Br."); *see also* Answering Br. of Anthemis Ventures, LLC's Mot. to Dismiss Am. Verified Compl. (Dkt. 18) ("Pl.'s Opp'n Br."); Reply Br. in Supp. of Victory Park Capital Advisors, LLC's Mot. to Dismiss Am. Verified Compl. (Dkt. 22) ("Def.'s Reply Br.").

[41] Tr. of Sept. 11, 2025 Hr'g on Def.'s Mot. to Dismiss (Dkt. 30) ("Hr'g Tr.").

[42] Ct. Ch. R. 12(b)(6).

[43] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

[44] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[45] *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999), *aff'd sub nom.*, *Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).

[46] *Savor*, 812 A.2d at 896-97.

After considering each of Anthemis's claims, I conclude that none are viable. The fraud and promissory estoppel claims are defective for lack of a false or actionable misrepresentation. As for the negligence theories, Anthemis has not carried its burden to apply foreign law. At any rate, the negligent misrepresentation claim fails under Delaware law, and the negligent misstatement claim fails under English and Welsh law. The Complaint must be dismissed in full.

## A.     Fraud (Count I)

Anthemis first claims that VPC's December 23 Letter and Email fraudulently induced Anthemis "to make a $10 million equity investment into Moonshot."[47] It contends that VPC falsely promised to waive defaults and provide a "runway" for Moonshot to grow, while concealing its true intent to force a merger with other VPC-funded aggregators.[48] It also asserts that VPC made these representations with intent to induce reliance, or at least with reckless indifference to the statements' veracity.[49]

To state a fraud claim, Anthemis must allege:

---

[47] Am. Compl. ¶ 143. Anthemis relies on the same "representations" to support each of its four claims. *Id.* ¶¶ 141, 152, 163, 178 (stating, in all four paragraphs verbatim, that the representations at issue "promise[] that should Anthemis make a $10 million equity investment into Moonshot, VPC would honor funding requests by Moonshot, would resume funding and continue to fund Moonshot, waive[] any potential covenant default for nine months and that, upon closing Anthemis' investment, Moonshot would have 'runway to capitalize on the new equity' as a fully independent company").

[48] *Id.* ¶ 141.

[49] *Id.* ¶¶ 144-45.

1) a false representation, usually one of fact . . . ; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance.[50]

Court of Chancery Rule 9(b) requires that "the circumstances constituting fraud" be stated "with particularity[,]" except that "conditions of a person's mind may be alleged generally."[51] Anthemis has pleaded neither an actionable misrepresentation nor justifiable reliance under this standard.

### 1. Lack of False or Actionable Misrepresentations

There are three types of common-law fraud in Delaware: "1) representing false statements as true; 2) actively concealing facts which prevents the plaintiff from discovering them; or 3) remaining silent in the face of a duty to speak."[52] Anthemis invokes the first type. It alleges that VPC's December 23 Letter and Email falsely assured Anthemis that, upon investing $10 million, the "coverage ratios"

---

[50] *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992). Anthemis initially claimed that English and Welsh law applies to Count I. *See* Pl.'s Opp'n Br. 15-23; Am. Compl. ¶ 148. At oral argument, its counsel clarified that Count I is brought under Delaware law, though a procedural nuance could apply at trial. Hr'g Tr. 26-27 (stating that Anthemis would only raise the choice of law issue on fraud "if [it] g[o]t past the motion to dismiss and . . . go[es] to trial").

[51] Ct. Ch. R. 9(b); *see also Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207 (Del. Ch. 2006).

[52] *BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*, 2004 WL 1739522, at *7 (Del. Ch. Aug. 3, 2004).

10

inhibiting funding would be "waive[d]" for an eight-month "covenant holiday."[53]

These statements cannot, however, support a fraud claim because they are either true or are non-actionable statements of expectation.

First, regarding the December 23 Letter, the Complaint confirms that VPC's representations were true. The December 23 Letter stated:

> Pursuant to the request of Moonshot Brands, Inc. ("Moonshot"), Victory Park Capital Advisors, LLC ("VPC") is providing this letter to inform you *that VPC would be willing to amend the terms of their $100,000,000 Senior Secured Loan (the "Credit Facility") with Moonshot as follows* in connection with and subject to the funding of at least $10,000,000 of equity capital by January 31, 2022 (the "Equity Transaction"). In particular, upon (and subject to) the closing of the Equity Transaction, VPC would (i) waive the Maximum Corporate Leverage Ratio and Minimum Fixed Charge Coverage Ratio covenants defined under the Credit Facility through the reporting of financials for the period ending August 31, 2022; (ii) waive the Mandatory Discretionary Loan Prepayment installments totaling $3,600,000 due February 1, 2022, March 1, 2022, and April 1, 2022 as defined in the First Amendment to the Credit Facility; and (iii) amend the Minimum Corporate Liquidity Amount as defined in the Credit Facility to $4,000,000.[54]

VPC subsequently entered the Third Amendment described in the December 23 Letter, and the covenant holiday occurred. As Anthemis acknowledges, VPC did not declare a default until October 2022—after "Moonshot's covenant holiday

---

[53] Am. Compl. ¶¶ 13, 90-92, 100, 141, 152, 163.

[54] December 23 Letter (emphasis added); *see* Am. Compl. ¶ 90.

11

expired."[55]  Because VPC performed as it represented it would, the statements

cannot be false.

Second, the allegations based on the December 23 Email fare no better.  The

December 23 Email stated:

> [P]lease see attached for a letter outlining the covenant holiday
> extension and amortization waivers discussed.  ***This should
> provide some comfort for Anthemis that upon closing the
> business has runway to capitalize on the new equity***.
> Additionally included is a slight increase in minimum liquidity
> required.  This was a requirement coming out of IC to get them
> comfortable with the business ***shifting back into growth mode***
> and will automatically be in compliance upon the equity funding
> in any case.[56]

The statements that Moonshot would have "runway to capitalize" and "would shift

back into growth mode" are not actionable representations of fact.[57]  Anthemis

insists they constitute "present 'misrepresentations of implied fact[,]'" citing *Wal-*

*Mart Stores, Inc. v. AIG Life Insurance*.[58]  But unlike the definitive statements in

*Wal-Mart*, VPC's references to "runway" and "growth" are vague, forward-looking

---

[55] Am. Compl. ¶ 136.

[56] December 23 Email 1-2 (emphasis added); *see* Am. Compl. ¶ 92.

[57] Dec. 23 Email 2.

[58]  Pl.'s  Opp'n  Br.  26  (citing  *Wal-Mart  Stores,  Inc.  v.  AIG  Life
Ins.*, 901 A.2d 106, 116 (Del. 2006)).  Anthemis also relies on *Winner Acceptance Corp.
v. Return on Capital Corp.*, which held that "promises[,]" which the speaker "had no
intention of performing" during "the time [they] were made[,]" may be actionable.
2008 WL 5352063, at *7 (Del. Ch. Dec. 23, 2008).  In *Winner*, the promise was made in
close temporal proximity to its would-be performance.  Here, by contrast, the events were
months apart.  *See* Def.'s Reply Br. 12.

predictions. They lack any representation of verifiable existing fact, implied or otherwise.[59] Put differently, they are vague "statements of expectation or opinion about the future of the company and the hoped for results of business strategies."[60] Anthemis cannot hold VPC liable for fraud simply because VPC's early optimism was met with "less favorable actual results."[61]

### 2. Lack of Justifiable Reliance

Anthemis's fraud claim also fails because it has not pleaded justifiable reliance with particularity. To plead justifiable reliance, a plaintiff must allege that it "acted based on [a] material representation or omission."[62] The analysis is generally "context-dependent" and "takes into account the plaintiff's knowledge and experience."[63]

---

[59] *BAE Sys.*, 2004 WL 1739522, at *7 ("Expressing opinions or predictions about the future, . . . 'cannot give rise to actionable common law fraud.'" (quoting *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 554 (Del. Ch. 2001))).

[60] *Mooney v. E.I. du Pont de Nemours & Co.*, 2017 WL 5713308, at *6 (Del. Super. Nov. 28, 2017), *aff'd*, 192 A.3d 557 (Del. 2018) (TABLE).

[61] *Noerr v. Greenwood*, 1997 WL 419633, at *4 (Del. Ch. July 16, 1997); *see also Stein v. Wind Energy Hldgs., Inc.*, 2022 WL 17590862, at *7 (Del. Super. Dec. 13, 2022) (finding statements that a company was "viable" or set to close a "very large" institutional investment to be statements of "expectations for a company's future performance" that "generally are not actionable"); *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 775 (Del. Ch. 2014) (explaining that "puffery" is not actionable).

[62] *Trifecta Multimedia Hldgs. Inc. v. WCG Clinical Servs. LLC*, 318 A.3d 450, 465 (Del. Ch. 2024).

[63] *Id.*

Given the statements at issue, it is hard to see how Anthemis—a sophisticated investor—could have justifiably relied on them. The December 23 Letter stated that it did "not constitute or create any guaranty or other obligation of VPC to ultimately effect the amendments detailed [t]herein."[64] Anthemis could not justifiably rely on a communication that explicitly disclaims any binding obligation.

Anthemis attempts to salvage its claim by arguing that this disclaimer became moot once VPC executed the Third Amendment three days before the investment.[65] This argument is meritless. VPC's execution of the amendment does not retroactively transform its prediction about "runway" into a guarantee of future funding or performance. The only reasonable inference is that Anthemis chose to invest in Moonshot while lacking any concrete assurance from VPC beyond the Third Amendment's terms.

## B.  Negligence-Based Claims (Counts II and III)

Anthemis advances claims for negligent misrepresentation (Count II) and negligent misstatement (Count III), relying on the December 23 Letter and Email.[66] It urges a bifurcated choice of law analysis, such that Delaware law applies to Count

---

[64] Dec. 23 Letter; *see* Am. Compl. ¶ 90.

[65] Pl.'s Opp'n Br. 38.

[66] Am. Compl. ¶¶ 152, 163. Much like its argument for Count I, Anthemis asks me to hold VPC liable because VPC "concealed" its plan to merge Moonshot with other "VPC-funded aggregators." *Id.* ¶ 153.

14

II and English and Welsh law applies to Count III.[67] Anthemis has not met its burden to show that foreign law applies. Even if it had, both claims must be dismissed. Count II does not state a claim under Delaware law, and Count III fails under English and Welsh law.

### 1. Choice of Law

Anthemis frames the choice of law inquiry as a selection between two causes of action. If Delaware law applies, it argues, then Count II proceeds. But if English or Welsh law applies, then Count III proceeds.[68] This approach misapplies fundamental choice of law principles.

Under Delaware's conflict of law doctrine, the court must first "compare[] the laws of the competing jurisdictions to determine 'whether the laws actually conflict on a relevant point.'"[69] If the "competing laws would yield the same result, then there is no genuine conflict, and no [conflict] of law analysis is necessary."[70] Only

---

[67] Hr'g Tr. 47-49. In the Complaint, Anthemis stated that the law of England and Wales should apply to Counts I and III. Am. Compl. ¶¶ 41, 148, 162. At oral argument, however, counsel framed the "conflict" as between the causes of action for negligent misstatement and negligent misrepresentation. Hr'g Tr. 47-49.

[68] Hr'g Tr. 48.

[69] *Aguilar Marquinez v. Dole Food Co.*, 2020 WL 10895709, at *2 (D. Del. Sept. 18, 2020) (quoting *Vichi*, 85 A.3d at 773).

[70] *Id.*

where a true conflict exists will the court apply the "most significant relationship" test.[71]

"[T]he party seeking the application of foreign law has the burden of not only raising the issue that foreign law applies, but also the burden of adequately proving the substance of the foreign law."[72] Anthemis falls short of this burden. Rather than demonstrating a genuine conflict between Delaware and English law on the elements of negligent misrepresentation—a cause of action both jurisdictions recognize—it asks me to toggle between two separate tort theories based on the choice of law outcome.

Because Anthemis made no attempt to identify a conflict on negligent misrepresentation, I apply Delaware law to Count II.[73] As to Count III, Anthemis asserts a claim for negligent misstatement—a tort specific to English law that lacks

---

[71] *Id.*; *see also Travelers Indem. Co. v. Lake*, 594 A.2d 38, 46-47 (Del. 1991) (applying the "most significant relationship test" from the Restatement (Second) of Conflict of Laws).

[72] *Vichi*, 85 A.3d at 765 (quoting *Republic of Pan. v. Am. Tobacco Co.*, 2006 WL 1933740, at *4 (Del. Super. June 23, 2006), *aff'd sub nom.*, *Sao Paulo of Federative Republic of Braz. v. Am. Tobacco Co.*, 919 A.2d 1116 (Del. 2007)).

[73] *See Vichi*, 85 A.3d at 818 (applying Delaware law where the plaintiff failed to provide enough information on the foreign law and whether it conflicted with Delaware law); Restatement (Second) of Conflict of L. § 136 cmt. h (A.L.I. 1971) ("[W]here either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law except when to do so would not meet the needs of the case or would not be in the interests of justice.").

a direct equivalent in Delaware. For the sake of completeness, I analyze Count III under the law of English and Wales.

### 2. Negligent Misrepresentation

A negligent misrepresentation claim requires a plaintiff to plead that: "(1) the defendant had a pecuniary duty to provide accurate information, (2) the defendant supplied false information, (3) the defendant failed to exercise reasonable care in obtaining or communicating the information, and (4) the plaintiff suffered a pecuniary loss caused by justifiable reliance upon the false information."[74] Although negligent misrepresentation is "essentially a species of fraud with a lesser state of mind requirement," it imposes an additional pecuniary duty element.[75] To survive dismissal, a plaintiff must allege "either (i) a special relationship between the parties over which equity takes jurisdiction (like a fiduciary relationship) or (ii) justification for a remedy that only equity can afford."[76]

---

[74] *Steinman v. Levine*, 2002 WL 31761252, at *15 (Del. Ch. Nov. 27, 2002).

[75] *See Vichi*, 85 A.3d at 822.

[76] *Envo, Inc. v. Walters*, 2009 WL 5173807, at *6 (Del. Ch. Dec. 30, 2009). The law of England and Wales similarly provides that a claim is actionable when the speaker negligently makes a false representation to another person, who relies on the statement to her detriment. As in Delaware, a special relationship is required. *See* 1 *Palmer's Company Law* 5.748 ("In order to recover damages based on the tort of negligent misrepresentation, the plaintiff must establish that the defendant owed him a duty of care not to cause loss or damage of the kind caused by breach of that duty."). The court must consider the "proximity of [the] relationship" at issue—which is understood to mean the "closeness and directness of the relationship between the parties." *Id.* (citing *Smith v. Bush* [1990] 1 AC 861, 865 (UK)).

17

Setting aside the lack of a false or actionable misrepresentation,[77] Anthemis pleads no facts supporting a reasonable inference that it shared a special relationship with VPC. In fact, Anthemis does not—and cannot—allege that it had *any* relationship with VPC. VPC, a lender to Moonshot, and Anthemis, an equity investor in Moonshot, were not in privity. The Financing Agreement expressly disclaimed any intent to benefit third parties.[78] Moreover, both VPC and Anthemis are sophisticated parties represented by counsel—a context in which Delaware courts are reluctant to impose extra-contractual duties.[79]

Nor has Anthemis pleaded the necessary justification for equitable relief. A "justification for a remedy that only equity can afford" may exist where money damages will not provide the party with a "full, fair, and complete remedy."[80] But

---

[77] *See supra* notes 52-61 and accompanying text (analyzing the same alleged misstatements in the context of Anthemis's fraud claim).

[78] Financing Agreement § 13.9 (providing that the agreement was "intended for the benefit of the parties . . . and is not for the benefit of, nor may any provision hereof be enforced by, any other Person"); *see Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *3 (Del. Ch. Feb. 17, 2004) (explaining the circumstances under which third-party beneficiaries may be recognized).

[79] *See, e.g.*, *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *9 (Del. Ch. Jan. 30, 2015) (dismissing a negligent misrepresentation claim arising from an arms-length transaction between sophisticated parties); *LVI Gp. Invs., LLC v. NCM Gp. Hldgs., LLC*, 2018 WL 1559936, at *18 (Del. Ch. Mar. 28, 2018) (dismissing a negligent misrepresentation claim because the parties did not have a fiduciary relationship and the parties "were presumably represented by competent counsel").

[80] *Envo*, 2009 WL 5173807, at *6.

18

Anthemis seeks legal relief: "damages in an amount not less than $10 million" plus fees and costs.[81]  Thus, Count II is legally insufficient.[82]

### 3.    Negligent Misstatement

English law recognizes a distinct tort of negligent misstatement.[83]  Liability may arise where a defendant "voluntarily 'assumes responsibility' for a careless misrepresentation towards its recipient," knowing that the recipient will rely on it "in a known anticipated transaction."[84]  Although the parties dispute whether this tort requires a "special relationship" akin to Delaware law,[85] I need not resolve that debate.  The claim fails on a more fundamental ground.  English law requires a false statement of *fact*—not of opinion.[86]  None is pleaded.

---

[81] Am. Compl., Prayer for Relief.

[82] *See Dialog Semiconductor*, 2015 WL 401371, at *9 (holding that no justification for an equitable remedy was shown because the plaintiff sought "damages and not any form of equitable relief" for its negligent misrepresentation claim).

[83] *See Steel & Another v. NRAM Ltd.* [2018] UKSC 13 ¶ 24 (UK).

[84] Pl.'s Opp'n Br. 39 (quoting *NRAM*, [2018] ¶ 24); *NRAM*, [2018] UKSC 13 ¶ 23; *see also Banca Nazionale del Lavoro SPA v. Playboy Club London Ltd. & Others* [2018] UKSC 43 ¶ 8 (UK) ("The salient feature . . . is that the defendant giving advice or information was fully aware of the nature of the transaction which the plaintiff had in contemplation, knew that the advice or information would be communicated to him directly or indirectly and knew that it was very likely that the plaintiff would rely on that advice or information in deciding whether or not to engage in the transaction in contemplation." (citing *Caparo Indus. Plc v. Dickman* [1990] 2 AC 605, 620-21 (UK))).

[85] Def.'s Opening Br. 27.

[86] *Cassa di Risparmio della Repubblica di San Marino SpA v. Barclays Bank Ltd.* [2011] EWHC (Comm) 484 (UK) ("In order to be actionable a representation must be as to a matter of fact.  A statement of opinion is therefore not in itself actionable.").

First, as explained above, Anthemis has not alleged that the representations in the December 23 Letter were false.[87] Rather, it acknowledges that VPC did what it said it would do: execute the Third Amendment and grant a covenant holiday.[88]

Second, VPC's assurances of a "runway to capitalize" and a shift to "growth mode" in the December 23 Email are statements of opinion and expectation rather than present fact.[89] Under English law, such statements are actionable only if the claimant shows the speaker lacked reasonable grounds for the opinion when it was expressed.[90] Anthemis fails to plead any non-conclusory allegation that VPC's opinion was willfully false or made without reasonable grounds. That the predicted growth never materialized does not transform a statement of commercial expectation into a misstatement of fact.

---

[87] *See supra* note 77 and accompanying text.

[88] *See supra* note 55 and accompanying text.

[89] Dec. 23 Email; *see supra* notes 59-61 and accompanying text.

[90] *Springwell Navigation Corp. v. JP Morgan Chase Bank* [2010] EWCA (Civ) 1221 (UK) (accepting the trial judge's conclusion that "expressions of opinion without any representation by the maker [of the statement] that he had reasonable grounds for his view" are inactionable); *Esso Petroleum Co. v. Mardon* [1976] QB 801 (UK) (stating that a speaker is liable where he "negligently gives unsound advice or misleading information or expresses an erroneous opinion" without reasonable grounds for making it).

## C. Promissory Estoppel (Count IV)

Anthemis's final cause of action is for promissory estoppel. The claim is based on the same alleged misstatements addressed in Counts I through III.[91] It fails for similar reasons.

To state a claim for promissory estoppel, a plaintiff must plead that:

> (1) a promise was made; (2) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (3) the promisee reasonably relied on the promise and took action to his detriment; and (4) such promise is binding because injustice can be avoided only by enforcement of the promise.[92]

The promise must be "reasonably definite and certain," not a "mere expression[] of expectation, opinion, or assumption."[93]

VPC made no such promise in the December 23 Email or Letter. Regarding the December 23 Letter, VPC told Anthemis that VPC did not have to effectuate the amendments discussed in the December 23 Letter. VPC made an express disclaimer that the letter did "not constitute or create any guaranty or other obligation of VPC to ultimately effect the amendments" it described.[94] Given this unambiguous

---

[91] *See supra* Sections II.A-II.B.

[92] *Grunstein v. Silva*, 2009 WL 4698541, at *7 (Del. Ch. Dec. 8, 2009).

[93] *James Cable, LLC v. Millenium Digit. Media Sys., L.L.C.*, 2009 WL 1638634, at *5 (Del. Ch. June 11, 2009).

[94] Dec. 23 Letter.

language, it cannot reasonably be inferred that VPC made a definite and certain promise to Anthemis.[95]

The claim is similarly deficient regarding the December 23 Email. The email merely stated VPC's expectation that Moonshot would have "runway to capitalize" on the new equity if the Third Amendment closed.[96] This conditional statement of expectation cannot support a promissory estoppel claim.[97]

## III. CONCLUSION

For the above reasons, Anthemis has not stated a claim on which relief can be granted as to any count in the Complaint. VPC's motion to dismiss is therefore granted, and the Complaint is dismissed with prejudice.

---

[95] *See Territory of U.S. Virgin Islands v. Goldman, Sachs & Co.*, 937 A.2d 760, 804 (Del. Ch. 2007) (explaining that a statement disclaiming reliance cannot form the basis of a promise, which must be "definite and certain").

[96] Am. Compl. ¶ 92.

[97] *See Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 876 (Del. 2020) (affirming the dismissal of promissory estoppel claim where the proposed transaction was subject to conditions, including approval by the defendant's credit committee); *see also Lyons Ins. Agency Inc. v. Wilson*, 2018 WL 481641, at *3 (Del. Ch. Jan. 19, 2018) ("[A]n expression of intent cannot be used to establish a promissory estoppel claim.").